IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS A. ORMAN and | : | |
| LESLIE E. ESPOSITO, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | NO. 11-3196 |
| v. | : | |
| | : | |
| MORTGAGEIT, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION**

**Slomsky, J.**                                                                 **March 30, 2012**

## I.    INTRODUCTION

This case involves a dispute over a residential mortgage.  On September 7, 2011,

Plaintiffs Thomas Orman ("Plaintiff Orman") and Leslie Esposito ("Plaintiff Esposito")

(collectively "Plaintiffs") filed a Verified Second Amended Complaint (Doc. No. 16) against

Defendants CitiMortgage, Fannie Mae, John Does, and HSBC Bank USA.[1]  The Verified Second

Amended Complaint alleges violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641,

*et seq*., and the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605, *et seq*., and

the commission of fraud.  Plaintiffs seek rescission and bifurcation of their loan and mortgage,

---

[1] On June 28, 2011, Plaintiffs removed Defendant MortgageIT from the instant action by not naming MortgageIT as a defendant in the Verified Second Amended Complaint.  (Doc. No. 16.)  Following a hearing on February 14, 2012, Plaintiffs agreed that HSBC Bank USA also could be removed as a defendant.  On the same day, the Court entered an Order dismissing HSBC Bank USA as a defendant.  (Doc. No. 31.)  Therefore, the only remaining Defendants are: CitiMortgage, Fannie Mae, and the John Doe placeholders.

quiet title on their property, and money damages.[2]   Defendants CitiMortgage and Fannie Mae

filed a Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure

12(b)(6) and to Assess Costs of [a] Previously Dismissed Action.[3]  (Doc. No. 5)

For reasons that follow, the Court will grant in part and deny in part Defendants' Motion

to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and to

Assess Costs of [a] Previously Dismissed Action.  (Doc. No. 5.)

## II.   PROCEDURAL HISTORY

On January 7, 2011, Plaintiff Orman filed the initial complaint in this Court against

Defendants CitiMortgage and Fannie Mae.  (Orman v. MortgageIT, et al., No. 11-139 (E.D. Pa.

filed Jan. 7, 2011).)  Plaintiff Orman subsequently filed several amended complaints alleging

violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605, et seq.,

---

[2] Accompanying Plaintiffs' Verified Second Amended Complaint are two Requests for
Judicial Notice.  (Doc. Nos. 20, 22.)  The first Request (Doc. No. 20) attaches six state court
opinions.  The second Request (Doc. No. 22) attaches a state court class action complaint and a
report titled "MERS: The Unreported Effects of Lost Chain of Title on Real Property Owners."
Defendants have not objected to these Requests (Doc. Nos. 20, 22).
    Federal Rule of Evidence 201(b) permits a court to take notice of information that is: "not
subject to reasonable dispute in that [it is] either 1) generally known within the territorial
jurisdiction of the trial court or 2) capable of accurate and ready determination by resort to
sources whose accuracy cannot reasonably be questioned."  In re NAHC, Inc. Sec. Litig., 306
F.3d 1314, 1331 (3d Cir. 2002) (quoting Fed. R. Evid. 201(b)).  Moreover, Federal Rule of
Evidence 201(d) requires a court to take notice of documents if a party requests notice and
supplies the court with the necessary information.  Fed. R. Evid. 201(d).  Here, the Requests
include documents from other courts and a public report.  Accordingly, the Court will take notice
of the documents submitted with the Requests for Judicial Notice (Doc. Nos. 20, 22).

[3] On June 28, 2011, Defendants Citibank and Fannie Mae filed a Motion to Dismiss
Plaintiffs' Complaint and to Assess Costs of [a] Previously Dismissed Action.  (Doc. No. 5.)
Following this filing, Plaintiffs filed the Verified Second Amended Complaint on September 7,
2011.  (Doc. No. 16.)  At a hearing held on October 7, 2011, it was agreed that the Motion to
Dismiss (Doc. No. 5) would apply to the Verified Second Amended Complaint (Doc. No. 16)
(Hr'g Tr. 5:25-6:4, Oct. 7, 2011).

and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641, *et seq.*, and seeking rescission of his mortgage.  (Orman, Civ. No. 11-139, Doc. Nos. 10, 17.)  On May 16, 2011, Plaintiff Orman filed a Notice of Voluntary Dismissal in Civil Action No. 11-139 pursuant to Local Rule 41(a). (Orman, Civ. No. 11-139, Doc. No. 41.)  In an Order dated May 17, 2012, the Court dismissed Civil Action No. 11-139 without prejudice.  (Orman, Civ. No. 11-139, Doc. No. 42.)

On May 16, 2011, Plaintiffs filed another Complaint against Defendants in the instant case.[4]  (Doc. No. 1.)  On September 7, 2011, Plaintiffs filed their Verified Second Amended Complaint.  (Doc. No. 16.)  This Complaint contains five counts.  The counts and defendants named in each one are as follows:

- Count I, alleging violations of the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*:

  (1)    Defendant CitiMortgage

- Count II, alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641, *et seq.*, and Regulation Z, 12 C.F.R. § 226.39:

  (1)    Defendant CitiMortgage

  (2)    Defendant Fannie Mae

- Count III, alleging the commission of fraud:

  (1)    Defendant CitiMortgage

  (2)    Defendant Fannie Mae

---

[4] As noted, Plaintiffs originally filed claims against MortgageIT, CitiMortgage, Fannie Mae, John Does, and HSBC Bank USA.  The only remaining Defendants are CitiMortgage, Fannie Mae, and the John Does.  Therefore, the Court will only refer to these Defendants in the balance of this Opinion.

- Count IV, seeking bifurcation of the Mortgage and Note:[5]

  (1)     Defendant CitiMortgage

  (2)     Defendant Fannie Mae

- Count V, alleging a cause of action seeking to quiet title:

  (1)     Defendant CitiMortgage

  (2)     Defendant Fannie Mae[6]

On June 28, 2011, Defendants filed the Motion to Dismiss Plaintiffs' Complaint and to Assess Costs of [a] Previously Dismissed Action.[7]  (Doc. No. 5.)  On July 11, 2011, Plaintiffs filed a Motion to Deny [the] Motion to Dismiss and Response.  (Doc. No. 11.)  On July 18, 2011, Defendants filed a Reply.  (Doc. No. 9.)  On October 7, 2012, the Court held a hearing on the Motion to Dismiss Plaintiffs' Complaint and to Assess Costs of [a] Previously Dismissed Action. (Doc. No. 5.)  Accordingly, the Motion to Dismiss is now ripe for disposition.

## III.    SUMMARY OF FACTUAL HISTORY

On May 31, 2007, Plaintiffs received a loan (the "Loan") from Defendant MortgageIT in the amount of $140,000.  (Doc. No. 16 ¶ 7; Doc. No. 16, Ex. A.)  Plaintiffs executed a note (the "Note") evidencing the Loan and a mortgage (the "Mortgage") securing the Loan against their

---

[5] Plaintiffs make their request for bifurcation a distinct claim in the Complaint.  As discussed *infra* Section V, bifurcation is not an independent cause of action.

[6] Plaintiffs do not clearly name Defendants CitiMortgage and Fannie Mae in Counts IV and V.  However, they discuss Defendants' participation in the actions taken in both Counts. Because Plaintiffs appear *pro se*, the Court will read these Counts as naming CitiMortgage and Fannie Mae as defendants.

[7] As noted *supra* note 1, the Motion to Dismiss (Doc. No. 5) applies to the Verified Second Amended Complaint (Doc. No. 16).

4

property (the "Property") located at 888 Woodlawn Ave., Phoenixville, PA 19460.  (Doc. No. 16 ¶ 7; Doc. No. 16, Exs. A, B.)  MortgageIT was the original lender on the Note and Mortgage (Doc. No. 16, Ex. B), and GMAC was named as the servicer of the Mortgage (Doc. No. 16, Ex. A).[8]  Mortgage Electronic Registration Systems ("MERS") was the nominee for the lender and the lender's assigns.[9]  (Doc. No. 16, Ex. B.)

On June 23, 2007, Defendant MortgageIT transferred its interest in the Note and Mortgage to Defendant CitiMortgage, making Defendant CitiMortgage both the lender and servicer of the Loan.  (Doc. No. 16, Ex. K.)[10]  On June 26, 2007, Defendant CitiMortgage transferred its interest in the Note and Mortgage to Defendant Fannie Mae.  (Id.)  Defendant CitiMortgage remained the servicer and Defendant Fannie Mae became the owner of the Loan. (Doc. No. 5 at 5.)

In 2007 and 2008, Plaintiffs allege that they encountered problems with the servicer of the Loan, Defendant CitiMortgage, including CitiMortgage's failure to timely pay property taxes and provide adequate customer service.  (Doc. No. 16 ¶ 11.)  On April 30, 2010, Plaintiff Orman sent a 17-page letter (the "April 30th Letter") to Defendants CitiMortgage and MortgageIT,

---

[8] A loan servicer is the entity to which mortgage payments are made.  Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1039 (9th Cir. 2011).

[9] "MERS is a private electronic database . . . that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers."  Cervantes, 656 F.3d at 1038.

[10] In the Verified Second Amended Complaint, Plaintiffs allege CitiMortgage became the servicer on August 1, 2007.  (Doc. No. 16 ¶ 10.)  The MERS records show this date to be June 23, 2007.  (Doc. No. 5, Ex. C at 2).  The two-month difference has no effect on the outcome of this case.

which he titled a Qualified Written Request ("QWR").[11]   (Doc. No. 16 ¶ 12; Doc. No. 16, Ex.

C.)  The April 30th Letter demanded "required documents and answers" to 192 inquiries and

contained a statement by Plaintiffs that they intended to rescind the loan sometime in the future.

(Doc. No. 5, Ex. D.)

On May 12, 2010, Defendant CitiMortgage acknowledged receipt of the April 30th Letter

(Doc. No. 5, Ex. E.)  On August 17, 2010, Defendant CitiMortgage provided substantive

responses to the April 30th Letter.  (Doc. No. 16 ¶ 14; Doc. No. 5, Ex. F.)  Defendant

CitiMortgage answered each of the 192 requests by providing copies of documents, including a

copy of the Note, a complete payment history, a copy of the Mortgage, copies of letters from

2009 and 2010, and a listing of CitiMortgage transaction codes.  Defendant CitiMortgage also

explained why certain requests could not be fulfilled.  For example, documents did not exist or

requests were made for items outside the scope of a QWR.  The response also included contact

information should Plaintiffs have additional questions.  (Doc. No. 5, Ex F.)

On December 6, 2010, Plaintiffs sent a second letter to Defendants CitiMortgage,

MortgageIT and Fannie Mae.  This 23-page letter was entitled "Qualified Written Request,

Complaint Dispute & Validation of Debt Request Under FDCPA, TILA, RESPA Request [and]

Administrative Request for Information" (the "December 6th Letter").  (Doc. No. 16 ¶ 15; Doc.

No. 16, Ex. E.)  The December 6th Letter accused Defendants CitiMortgage and Fannie Mae of

violating numerous federal statutes, including RESPA and TILA.  This letter also contained over

---

[11] Under RESPA, a QWR is defined as "a written correspondence that includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  Gruninger v. America's Servicing Co., No. 08-572, 2010 WL 653119, at *4 (E.D. Pa. Feb. 22, 2010) (citing 12 U.S.C. § 2605(e)(1)(B)).

120 requests for information and documents.  Finally, Plaintiffs demanded rescission of the loan.
(Id.)  Specifically, the December 6th Letter stated that "I [Plaintiffs] WISH TO CANCEL.  This
[letter] shall constitute my Notice of Right to Cancel.  This loan is rescinded as of this 6th day of
December 2010, due to the Originator's and other unknown parties' Material Breaches and
misrepresentations discovered in a preliminary audit.  This loan is also rescinded due to a lack of
any Real Party in Interest.  This loan is also rescinded due to a lack of any valid good faith
Holder in Due Course pursuant to 13 Pa. Cons. Stat. § 3302."  (Doc. No. 16, Ex. E at 9.)

On December 28, 2010, Defendant CitiMortgage acknowledged receipt of the December
6th Letter.  (Doc. No. 5, Ex. H.)  On February 28, 2011, CitiMortgage issued a substantive
response to the December 6th Letter.  (Doc. No. 5, Ex. I.)  In its response, CitiMortgage supplied
requested information within the statutory scope of RESPA, including copies of Plaintiffs'
Promissory Note, payment history, escrow statements, and letters regarding the transfer of
servicing for the Loan.  (Id.)  Defendant CitiMortgage explained that certain requests could not
be fulfilled because the requested information was "outside the scope of information required to
be provided under the Qualified Written Request provisions as set forth in RESPA."  (Id. at 5.)
Defendant Citimortgage finally stated "Your [Plaintiffs'] claims are respectfully refused."  (Doc.
No. 5, Ex. I at 5.)

Finally, Plaintiffs allege they sent to Defendant CitiMortgage on June 1, 2011, a third
letter, which Defendant CitiMortgage did not respond to.  (Doc. No. 16 ¶¶ 24-25.)

## IV.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set
forth in the Supreme Court's Opinion Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is

clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp. set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (quoting Iqbal, 129 S. Ct. at 1947, 1950).  "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler, 578 F.3d at 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it

has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (citations

omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing

court to draw on its judicial experience and common sense."  Id.

## V.     DISCUSSION

A.     The Claims of Plaintiffs

> COUNT I:     Plaintiffs v. Defendant CitiMortgage Alleging Violations of the
> Real Estate Settlement Procedure Act ("RESPA"),
> 12 U.S.C. § 2605, *et seq*.

Plaintiffs' first claim alleges Defendants violated the Real Estate Settlement Procedure

Act ("RESPA"), 12 U.S.C. § 2605, *et seq*.  Congress enacted RESPA to protect the interests of

loan borrowers.  See 12 U.S.C. § 2605(e)(1)(A).  Under RESPA, a borrower may request

information from the servicer of a federally related mortgage.  Id.  This right is enacted upon

when a borrower sends his servicer a qualified written request ("QWR").  Id.  Only

correspondence that "1) includes, or otherwise enables the servicer to identify, the name and

account of the borrower; and 2) includes a statement of the reasons for the belief of the borrower,

to the extent applicable, that the account is in error or provides sufficient detail to the servicer

regarding other information sought by the borrower" constitutes a QWR.  12 U.S.C. §

2605(e)(1)(B)(i)-(ii).

Here, Plaintiffs erroneously argue that the April, December, and June Letters constitute

QWRs.  As noted, a QWR must include "a statement of the reasons for the belief of the borrower

. . . that the account is in error or provide[] sufficient detail to the servicer regarding other

information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).  Here, Plaintiffs' reason for

9

inquiry is a general distrust of the mortgage industry.  (Doc. No. 16, Ex. C at 2 ("With our nation's mortgage default crisis and the mortgage scams that have occurred against millions of American families, I am most concerned that potential fraudulent and deceptive practices have been committed against me . . . "); Doc. No. 16, Ex. E at 2 ("It is my understanding that many companies may be engaging in one or more predatory servicing or lending and servicing schemes.").)  In their Letters, Plaintiffs allege no reason that their account is in error other than relying upon these broad accusations.  They are nothing more than conclusory allegations which run afoul of the Iqbal and Twombly standards.

Further, while the December 6th Letter and April 30th Letter request certain documents and information, mere requests of this nature do not automatically convert an inquiry into a QWR.  See e.g., Eifling v. Nat'l City Mortg., No. 10-5713, 2011 WL 893233, at *3 (W.D. Wash. Mar. 15, 2011) (finding that the plaintiff's "general notice of inquiry about the various fees and charges [of plaintiff's mortgage]," and a broad request for 22 categories of documentation" did not constitute a QWR).

Finally, Plaintiffs' third letter, the June Letter, does not state reasons that they believed their account was in default, nor does it request any kind of information.  Instead, it states that Defendants CitiMortgage and MortgageIT are "in DEFAULT for their failure to provide FULL DISCLOSURE to Thomas Alan Orman and Leslie Eve Esposito."  (Doc. No. 16, Ex. D.) Accordingly, the April 30th Letter, December 6th Letter, and June Letter do not constitute QWRs.

Even if there was a defect in complying with the time limits, there was no harm to

Plaintiffs, which is required by 12 U.S.C. § 2605(f)(1).[12]  Accordingly, Plaintiffs have not stated

a claim pursuant to RESPA.  Under RESPA, once a servicer receives a QWR, the servicer must

acknowledge receipt of the QWR within 20 days, excluding legal public holidays, Saturdays and

Sundays.  12 U.S.C. § 2605(e)(1)(A).  "Not later than 60 days (excluding legal public holidays)

after the receipt [of a QWR from the borrower,]" the servicer must make any necessary

corrections to the borrower's account or, after an investigation, provide a substantive response

explaining why the borrower's account is in fact correct or inform the borrower that the

requested information is unavailable.  12 U.S.C. § 2605(e)(2)(A)-(C).  A servicer's failure to

comply with these provisions can result in an assessment of any actual damages, as well as a fine

of up to $1,000 per violation.  12 U.S.C. § 2605(f)(1).[13]

      As to the April 30th Letter, Plaintiffs: 1) inquired into the status of the Loan; 2) requested

documents and information related to the servicing of the Loan; and 3) warned that Notice of

Default on the Loan would be filed.  (Doc. No. 16.)  In a letter dated May 12, 2010, within 20-

days of receipt of the April 30th Letter, Defendant CitiMortgage acknowledged receipt of the

April 30th Letter and stated a substantive response would be forthcoming.  (Doc. No. 5, Ex. E.)

_____

      [12] In relevant part, 12 U.S.C. § 2605(f) states that an individual may only recover damages
for "any actual damages" suffered and "any additional damages . . . in the case of a pattern or
practice of noncompliance . . . ."  12 U.S.C. § 2605(f)(1)(A)-(B).

      [13] Although Plaintiffs' Verified Second Amended Complaint refers to "seven" violations
(Doc. No. 16 ¶ 38), Plaintiffs appear to allege eight, and request $8,000 in statutory damages
($1,000 per violation under 12 U.S.C. §2605(f)(1)(A)-(B).  First, Plaintiffs claim that Defendant
CitiMortgage failed to acknowledge receipt of their three QWRs within the mandatory 20-day
limit.  (Id.)  Plaintiffs further contend that Defendant CitiMortgage failed to substantively
respond to all three of these QWRs within the 60-day period set by RESPA.  (Id.)  Finally,
Plaintiffs claim two additional RESPA violations arise from CitiMortgage's failure to "address
the issue[s] of two (2) QWR's [and failure to] substantially answer the questions [in them] and
instead ma[k]e comments about groups of questions rather than answer them[.]"  (Id.)

11

By August 17, 2010, Defendant CitiMortgage provided a substantive response to Plaintiffs' requests.  (Doc. No. 5, Ex. F.)  Defendant CitiMortgage replied by: 1) informing Plaintiffs that the status of the Loan was "In Dispute;" 2) providing documents that were available and within the scope of a QWR; 3) explaining why certain requests could not be fulfilled; 4) denying Plaintiffs' allegations; and 5) providing Plaintiffs with contact information in the event they had additional questions.  (Id.)

As to the December 6th Letter, Plaintiffs: 1) requested additional documents and information regarding the Loan; 2) accused Defendant CitiMortgage of several federal offenses; and 3) stated the Loan was cancelled.  (Doc. No. 16, Ex. E.)  In a letter dated December 28, 2010, within 20 days of receipt of the December 6th Letter, Defendant CitiMortgage acknowledged receipt of the December 6th Letter and informed Plaintiff the inquiry was being investigated and a substantive response would follow.[14]  (Doc. No. 5, Ex. H.)  On February 28, 2010, 60 days after sending the letter of acknowledgment, Defendant CitiMortgage responded by: 1) denying the accusations contained in the December 6th Letter; 2) providing documents regarding the transfer of the Loan, the history of payments on the Loan, the Loan's Promissory Note, and MERS Report; 3) explaining why certain documents and requests were not responded to; and 4) providing Plaintiffs with contact information if they had any further questions.  (Doc. No. 5, Ex. I.)

_____

[14] Because 12 U.S.C. § 2605(e)(1)(A) excludes Saturdays and Sundays, Defendant CitiMortgage's acknowledgment letter dated December 28, 2010 was timely.  The August 17, 2010 response to the April 30, 2010 letter was late by about one month.  Assuming that the letters of April 30, 2010 and December 6, 2010 qualified as QWRs, it is apparent that the response to the December 6th Letter was timely, as noted above, and no harm at all was suffered by Plaintiff from the delay in responding to the April 30, 2010 letter.

Accordingly, Plaintiffs suffered no harm or any actual damages from the purported violations of RESPA raised by Plaintiffs.  Defendant acknowledged receipt of Plaintiffs' Letters and provided substantive responses.  Further, Defendant CitiMortgage provided information and documents that were available and, if the documents were unavailable or outside the scope of a QWR, informed Plaintiffs of this fact.  With each response, Defendant also provided Plaintiffs with contact information where Plaintiffs could send additional questions.  While Plaintiffs argue these responses were "deficient" because Defendant CitiMortgage did not address the numerous requests individually, the manner of Defendant CitiMortgage's replies did not undermine the sufficiency of their substantive responses and the fact that Plaintiffs suffered no harm.  Finally, Plaintiffs have failed to allege any plausible facts showing a pattern of noncompliance by Defendants.

For these reasons, Count I alleging violations of RESPA will be dismissed.[15]

COUNT II:    Plaintiffs v. Defendants CitiMortgage and Fannie Mae Alleging
             Violations of the Truth in Lending Act ("TILA"),
             15 U.S.C. § 1641, *et seq*.

Plaintiffs allege that Defendants CitiMortgage and Fannie Mae violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641, *et seq*., and TILA's implementing regulation, 12 C.F.R. § 226.39, when they transferred the Loan without notifying Plaintiffs and without providing them with the transfer documents.  (Doc. No. 16 ¶¶ 42-53.)  Plaintiffs contend these

_____

[15] The third letter Plaintiffs allege they sent to Defendant CitiMortgage would appear to be similar in content to the first two letters.  (Doc. No. 16 ¶¶ 24-25.)  Since this letter was not received by Defendant CitiMortgage, it would not be responded to and accordingly no violations occurred.

violations warrant rescission of the Loan and the award of $ 3,356,609.40 in statutory damages. Both the rescission and statutory damage claims must fail because they are untimely.

As to the rescission claim, the Loan cannot be rescinded because the claim is time-barred. Pursuant to 15 U.S.C. § 1635(f), an obligor's right of rescission expires three years "after the date of consummation of the transaction or upon the sale of the property, whichever occurs first . . . ." Here, Plaintiffs closed on the Loan on May 31, 2007. On May 16, 2011, almost four years later, they filed the instant Complaint. Because Plaintiffs failed to file their rescission claim within the three-year statutory period, it is time-barred.[16]

Likewise, the claim for damages is barred by the statute of limitations. Plaintiffs seek statutory damages under TILA, 15 U.S.C. §1640(a), and Regulation Z, 12 C.F.R. § 226.1(e), for ten violations. They seek $335,660.94 for each violation, totaling $3,356,609.40. (Doc. No. 16 ¶ 53(1).) Under TILA, "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer . . . ." 15 U.S.C. § 1641(g). If a notice is not sent, a borrower must bring a claim for statutory damages "within one year from the

---

[16] Plaintiffs argue the three-year statutory period should be tolled because "[they] had no reason to even know that transfers of the Note had occurred and could not have discovered even the possibility of such concealed acts, the principal [sic] of Equitable Tolling does apply to the . . . [three] year Statute of Limitations." (Doc. No. 16 ¶ 46.) Plaintiffs' argument fails because the three-year period during which an obligor must rescind a Loan is a statute of repose, not a statute of limitations, and, as such, is not subject to equitable tolling. "While the statute of limitations may be equitably tolled, the limitation of the right to rescind is definitive and finite – section 1635(f) operates as a statute of repose so that the right to rescind unequivocally expires on the date three years after the transaction occurs." Lavelle v. M&T Mort. Corp., No. 05-2144, 2006 WL 2346320, at *2 (E.D. Pa. Aug. 11, 2006). See also Beach v. Ocwen Federal Bank, 523 U.S. 410, 412 (1998); Drennan v. PNC Bank, N.A., 622 F.3d 275, 301 (3d. Cir. 2010).

date of the occurrence of the [alleged] violation . . . ."  15 U.S.C. § 1640(e).

Here, the alleged violations arise from the transfers of the Note to Defendant

CitiMortgage on June 23, 2007 and then to Defendant Fannie Mae on June 26, 2007.  (Doc. No.

16 ¶¶ 43-44.)  Using these dates, the alleged violations occurred on July 24, 2007 and July 27,

2007, the dates by which Defendants CitiMortgage and Fannie Mae were required to send

transfer notices.  Given these dates, Plaintiffs had to file their claims for monetary damages

within one year of these dates or on either July 24, 2008 or July 27, 2008.  Plaintiffs did not file

their Complaint until May 16, 2011, almost three years after the expiration of the statute of

limitations.  Therefore, the statutory damages claims are time-barred.[17]

---

[17] Unlike the statute of repose applicable to rescission of the Loan, the statute of
limitations on the TILA statutory damages claim may be tolled.  Here, however, Plaintiffs failed
to proffer facts warranting equitable tolling of the TILA statutory damages claim.  The Third
Circuit has found equitable tolling appropriate in three situations: "1) where the defendant has
actively misled the plaintiff respecting the plaintiff's cause of action; 2) where the plaintiff in
some extraordinary way has been prevented from asserting his or her rights; or 3) where the
plaintiff has timely asserted his or her rights mistakenly in the wrong forum."  Oshiver v. Levin,
Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

Here, Plaintiffs argue the "information [regarding the TILA violations] is a tightly held
secret within the MERS community and is not available to the public nor the Plaintiff[s]."  (Doc.
No. 16 ¶ 48.)  They further allege that Defendant's responses to the April 30th and December 6th
Letters were deficient and, even if Plaintiffs sent qualified written requests at an earlier date, they
would not have received answers enabling them to file a claim.  (Id. at ¶ 48-49.)  Finally, they
argue that the Welcome Letter from CitiMortgage did not indicate any change of ownership and
that "Defendant CitiMortgage was deceitful and attempted to obscure the identity of the owners
of the Note through its responses to the two QWRs."  (Id. at ¶¶ 50-51.)

While Plaintiffs may have suffered frustration when inquiring into the status of the Loan,
Plaintiffs' allegations do not show that Defendants intentionally misled Plaintiffs, that Plaintiffs
were prevented from asserting their rights, or that Plaintiffs timely asserted their rights in a
different forum.  Here, Plaintiffs were able to solicit information regarding the Loan from
Defendants at all times, which they did by writing letters on multiple occasions.  Further, though
Plaintiffs allege Defendant CitiMortgage was "deceitful," they have not proffered any fact
demonstrating that Defendants misled Plaintiffs from pursuing the instant action.  Finally,
Plaintiffs have not alleged they filed their action in the wrong forum.  Therefore, tolling the

Accordingly, Count II alleging violations of TILA will be dismissed.

COUNT III:    Plaintiff v. Defendants CitiMortgage and Fannie Mae Alleging
Fraud

Plaintiffs allege that Defendants' failure to properly record assignments of the Note and

Mortgage constitute fraud under 21 Pa. Cons. Stat. Ann. §§ 621, 444.  (Doc. No. 16 ¶¶ 55-60.)

In Pennsylvania, "[n]o deed or mortgage . . . shall be good or sufficient to convey . . . unless such

deed be . . . recorded within six months after the date thereof . . . ."  21 Pa. Cons. Stat. Ann. §

621 (1715), *repealed in part*.  The deed or mortgage must also be acknowledged or notarized by

the appropriate public official "of the county wherein said conveyed lands [lie.]"  21 Pa. Cons.

Stat. Ann. § 444 (1775), *repealed in part*.  Section 444 provides that, if the mortgage is not

properly notarized and recorded, it "shall be adjudged fraudulent and void as to any subsequent

purchaser . . . or mortgagee . . . ."  Id.[18]

Here, Plaintiffs allege that Defendants failed to record the transfers on multiple occasions.

(Doc No. 16 ¶¶ 56-57.)  Specifically, Plaintiffs allege that unrecorded transfers took place on

June 23, 2007 from MortgageIT to Defendant CitiMortgage and on June 26, 2007 from

Defendant CitiMortgage to Defendant Fannie Mae.  (Id. at ¶ 56.)  Plaintiffs argue that the failure

to record these conveyances violated Pennsylvania law, and voided the subsequent assignment to

Defendant Fannie Mae.  (Id. at ¶¶ 56-71.)  Although Plaintiffs admit they were enrolled in

---

statute of limitations is not appropriate here.

[18] Plaintiffs also cite 21 Pa. Cons. Stat. Ann. § 623 for the proposition that assignment of
a mortgage must be in writing and notarized.  This law was repealed in 1998 and is not
applicable to the facts of this case.

MERS, the system that electronically registers for recordation mortgage documents, they argue that MERS does not comply with Pennsylvania law.  (Id. at ¶ 63.)  Viewing these facts broadly, Plaintiffs contend that because the "chain of [e]ndorsements was broken," the mortgage and loan agreement became fraudulent and void and therefore should now be rescinded by this Court.  (Id. at ¶ 94.)

First, Plaintiffs misunderstand MERS.  When a note and mortgage is first created, it is filed of record, and the Note and Mortgage in favor of MortgageIT was recorded.  Thereafter, MERS covers subsequent transfers of these instruments.  In Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034 (9th Cir. 2011), the Ninth Circuit explained MERS and its role in the mortgage industry:

> When a borrower takes out a home loan, the borrower executes two documents in favor of the lender: (1) a promissory note to repay the loan, and (2) a deed of trust, or mortgage, that transfers legal title in the property as collateral to secure the loan in the event of default. State laws require the lender to record the deed in the county in which the property is located. Any subsequent sale or assignment of the deed must be recorded in the county records, as well.

> This recording process became cumbersome to the mortgage industry, particularly as the trading of loans increased.  It has become common for original lenders to bundle the beneficial interest in individual loans and sell them to investors as mortgage-backed securities, which may themselves be traded.  MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender.

> At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database, not in county records, because MERS continues to hold the deed on the new lender's behalf.  If the beneficial interest in the loan is sold to a non-MERS member, the transfer of the deed from MERS to the new

lender is recorded in county records and the loan is no longer tracked in the MERS
system.

Cervantes, 656 F.3d at 1039 (citations omitted).  While Plaintiffs disagree with MERS and would

prefer that each transfer be separately recorded, their Note demonstrates that they agreed to

participate in the MERS.  (Doc. No. 16, Ex. B.)  It states that MERS would serve as a "nominee

for Lender and its Assigns . . . ."  (Doc. No. 16, Ex. B at 1.)  Plaintiffs further agreed that "[t]he

Note or a partial interest in the Note . . . can be sold one or more times without prior notice to the

Borrower."  (Doc. No. 16, Ex. B at 13.)  By signing the Note, Plaintiffs agreed to the terms of the

Mortgage, including the use of the MERS.  Accordingly, even if Plaintiffs now disagree with

MERS, they cannot use their dissatisfaction to claim the "chain of [e]ndorsements was broken"

and void their Loan.  (Doc. No. 16 ¶ 94.)  Moreover, no court has ever held that MERS violates

Pennsylvania law.[19]

Having established that Plaintiffs agreed to participate in MERS, the Court will now

address the merits of Plaintiffs' fraud claim.  To plead a fraud claim in Pennsylvania**,** a plaintiff

must prove: 1) a misrepresentation; 2) a fraudulent utterance; 3) intention by the speaker that the

recipient will be induced to act; 4) justifiable reliance by the recipient on the misrepresentation;

and 5) damages to the recipient as a result of his reliance.  Ellison v. Lopez, 959 A.2d 395, 398

(Pa. Super. Ct. 2008).

---

[19] Independent research by the Court has failed to uncover any case finding MERS
violates Pennsylvania state law.  Additionally, other courts have found MERS lawful.  See e.g.,
Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1044-45 (9th Cir. 2011);
MERSCORP, Inc. v. Romaine, 861 N.E.2d 81, 85 (N.Y. 2006).

Here, Plaintiffs claim that MERS is "insufficient to comply with . . ." Pennsylvania statutes.  However, Plaintiffs have not identified a misrepresentation or fraudulent utterance made to them about MERS.  Further, Plaintiffs' only allegations regarding misrepresentations or fraudulent utterances are that Defendant CitiMortgage's responses to the April 30th and December 6th Letters were "deceptive answers" and that Defendant Fannie Mae "conspired to conceal actions of fraud by the failure to answer . . ." Plaintiffs' Letters.  (Doc. No. 16 ¶¶ 67, 71.)  These conclusory assertions without any factual support are insufficient to prove a misrepresentation or a fraudulent utterance.  Accordingly, Plaintiffs have failed to prove the first two elements of a fraud claim.

For these reasons, Count III alleging the commission of fraud will be dismissed.

COUNT IV:   Plaintiff v. Defendants CitiMortgage and Fannie Mae Alleging Bifurcation

In Count IV, Plaintiffs argue that, because Defendants CitiMortgage and Fannie Mae committed "fraudulent" non-recorded transfers using MERS, the Note and Mortgage have been securitized[20] and, therefore, the Note and Mortgage should be bifurcated.  (Doc. No. 16 ¶¶ 103-116.)  Plaintiffs ask this Court for a judgment of bifurcation of the Mortgage from the Note, as well as a declaratory judgment "that all foreclosure cases where MERS is anywhere in the

---

[20] "Securitization of a loan is a form of structured finance in which pools of loans are packaged and sold to an independent entity that raises money to finance such purchase[s] by issuing notes or other securities backed by the pool of loans."  Underland v. Alter, No. 10-3621, 2011 WL 4017908, at *1 n.10 (E.D. Pa. Sept. 9, 2011) (quoting Lori J. Parker, Annotation, *Liability Under Federal Securities Laws of Sellers of Subprime Mortgage Loans*, 43 A.L.R. Fed. 2d 47, § 2 (2010)).

documentation must also have submitted proof . . . that no assignments of mortgage exist that are

unrecorded, fraudulent, and void, or are in violation of [Pennsylvania law.]"  (<u>Id.</u> at ¶ 126.)

Plaintiffs misinterpret the nature of bifurcation.  It is not an independent cause of action.

Instead, bifurcation is used to separate claims or issues within an action.  <u>See</u> <u>Lisa v. Fournier</u>

<u>Marine Corp.</u>, 866 F.2d 530, 531 (1st Cir. 1989) (defining bifurcation).  Pursuant to Federal Rule

of Civil Procedure 42(b), "[a] court may order a separate trial of one or more separate issues,

claims, crossclaims, counterclaims, or third-party claims."  Fed. R. Civ. P. 42(b).  When

considering a bifurcation claim, a court must determine whether separate trials would further

convenience, avoid prejudice, or promote judicial economy.  <u>Rodin Props.-Shore Mall, N.V. v.</u>

<u>Cushman & Wakefield, Inc.</u>, 49 F. Supp. 2d 709, 721 (D.N.J. 1999); <u>BancMortgage Financial</u>

<u>Corp.v. Guarantee Title & Trust Co.</u>, No. 99-2932, 2000 WL 1521600, at *1-2 (E.D. Pa. Oct. 6,

2000).

Here, Plaintiffs do not seek to bifurcate any claims or issues within the instant case.

Instead, their arguments regarding the separation of the Note and Mortgage seems to relate to

their Quiet Title claim, discussed below.  Accordingly, Count IV seeking bifurcation will be

dismissed.

        COUNT V:    Plaintiffs v. Defendants CitiMortgage and Fannie Mae Alleging a
                         Claim for Quiet Title

In Count V, Plaintiffs ask this Court for a judgment of quiet title.[21]  (Doc. No. 16 ¶¶ 127-

133.)  Reading the Verified Second Amended Complaint in the light most favorable to Plaintiffs,

---

     [21] Count V does not allege specific facts.  Instead, Plaintiffs "repeat and incorporate
paragraphs 1 through 126" of the Verified Second Amended Complaint.  (Doc. No. 16 ¶ 126.)

Plaintiffs have not pled a cause of action to quiet title.  Pennsylvania Rule of Civil Procedure 1061 states that an action to quiet title may be brought where "an action of ejectment will not lie, to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title, or interest in land."  Pa. R. C. P. 1061.

Here, Plaintiffs contend that the unrecorded assignments from MortgageIT to Defendant CitiMortgage and from Defendant CitiMortgage to Defendant Fannie Mae violated Pennsylvania law by "breaking the chain of title, clouding the title and making the Mortgage a nullity, fraudulent and void."  (Doc. No. 16 ¶ 115.)  They argue that the unrecorded assignments separated the Note from the Mortgage and contend the Mortgage was subject to securitization, rendering the Mortgage "null, deficient, and illegal . . . [and therefore constitutes] an improper cloud on title."  (Id. at ¶¶ 132.)  To resolve this "cloud," Plaintiffs request quiet title because they "are apprehensive that Defendants do intend to foreclose on the[ir] property . . . and [thereby] be unjustly enriched."[22]  (Id. at ¶ 133.)

Plaintiffs' apprehension alone does not establish a cause of action for quiet title.  Through the course of the instant lawsuit, Plaintiffs have learned: 1) Defendant CitiMortgage is the servicer of the Loan; 2) Defendant Fannie Mae is the owner of the Loan; and 3) if a foreclosure action is filed for non-payment of the Loan, Defendant CitiMortgage would likely bring the foreclosure action.  (Hr'g Tr. 9:12-22, Oct. 7, 2011.)  Further, Plaintiffs have been informed that

---

[22] Plaintiffs also seek a "Judgment barring and forever estopping Defendants from having or claiming any right or title to the premised adverse to Plaintiff[s]."  (Id. at ¶ 133(2).)

they may be at risk of foreclosure.  Moreover, Plaintiffs have not alleged any facts to warrant the withholding of their mortgage payments.[23]  (Hr'g Tr. 9:17-10:3, Oct. 7, 2011.)  Accordingly, Plaintiffs do not need a judgment quieting title to their Property in this case because Plaintiffs know what are the interests of the Defendants and what claim Defendants may have to the Property for violation of the terms of the Note and Mortgage.

The Court recognizes Plaintiffs' frustration with MERS and with the fact that Defendants MortgageIT and CitiMortgage transferred the Loan documents without notifying Plaintiffs. However, the Court cannot create a claim where Plaintiffs have failed to provide facts or law supporting a need to quiet title.  See e.g., Lariviere v. Bank of N.Y. as Tr., No. 9-515-P-S, 2010 WL 2399583, at *4 (D. Me. May 7, 2010) ("Many people in this county are dissatisfied and upset by [mortgage industry practices and the securitization] process, but it does not mean that . . . [a plaintiff has] . . . stated [a] legally cognizable claim[] against . . . [a defendant.]").  Given the facts alleged by Plaintiffs, an action to quiet title is unwarranted.

For these reasons, Count V alleging a cause of action to quiet title will be dismissed.

B.    Defendants CitiMortgage and Fannie Mae's Motion to Assess Costs of Previously Dismissed Action

If a plaintiff who previously dismissed an action files a second action "based on or including the same claim against the same defendant," the court may order the plaintiff to pay the costs of the previous action.  F. R. Civ. P. 41(d).  Here, Defendants CitiMortgage and Fannie

---

[23] A foreclosure action has not yet been filed against Plaintiffs for failing to make their Mortgage payments on a timely basis.

Mae seek the costs of the previous action, Civil Action No. 11-139, arguing that the Verified

Second Amended Complaint (Doc. No. 16) in the instant action assert identical claims against

the same defendants as were asserted in the prior voluntarily dismissed action.  (Orman v.

MortgageIT, Civ. No. 11-139, Doc. No. 41.)

A court has broad discretion when determining whether to assess costs and should not be

limited by Federal Rule of Civil Procedure 41(d).  Larsen v. Senate of the Commw. of Pa., 955 F.

Supp. 1549, 1582 (M.D. Pa. 1997).  Here, Plaintiffs are acting *pro se*.  Without the advice of

counsel, they likely misunderstood the effects of their voluntary dismissal in the previous action.

Accordingly, the Motion to Assess Costs (Doc. No. 5) will be denied.

## VI.    CONCLUSION

Plaintiffs have not sufficiently pled a cause of action for violations of the Real Estate

Settlement Procedure Act ("RESPA"), 12 U.S.C. § 2605, *et seq*., and Truth in Lending Act

("TILA"), 15 U.S.C. § 1641, *et seq*., and the commission of fraud (Counts I-III).  Plaintiffs have

not sufficiently pled an entitlement to bifurcation of the Note and Mortgage and to quiet title of

their Property (Counts IV-V).  Consequently, the Motion to Dismiss all counts will be granted.

Moreover, Defendants have not successfully pled entitlement to receive costs of the

previously withdrawn action.  Accordingly, the Motion to Assess Costs of Previously Dismissed

Action will be denied.

An appropriate Order follows.